IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SR INTERNATIONAL BUSINESS INSURANCE COMPANY LTD.**, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:07-CV-0908-L** (consolidated with 3:07-CV-0913-L) |
| **ENERGY FUTURE HOLDINGS CORP.**,[1] | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (i) SRI's Motion to Dismiss [Energy Future Holdings Corp.]'s Petition to Compel Arbitration, filed June 11, 2007; and (ii)[Energy Future Holdings Corp.]'s Motion to Dismiss SR International Business Insurance Company Ltd's Complaint, filed June 11, 2007. After careful consideration of the motions, briefs, responses, replies, appendices, record, and applicable law, the court **denies** SRI's Motion to Dismiss [Energy Future Holdings Corp.]'s Petition to Compel Arbitration, **grants** [Energy Future Holdings Corp.]'s Motion to Dismiss SR International Business Insurance Company Ltd's Complaint, and **orders** the parties to arbitrate as herein directed.

### I.  Factual and Procedural Background

This case arises from a dispute regarding coverage under an excess liability policy issued by SR International Business Insurance Company Ltd. ("SRI") to Energy Future Holdings Corp. ("Energy Future Holdings"). The excess policy contained language that incorporated by reference

---

[1]On January 28, 2008, TXU Corp. informed the court that its name had changed to Energy Future Holdings Corp. Accordingly, all references to TXU Corp. have been replaced with Energy Future Holdings Corp., and the court will refer to Defendant by Energy Future Holdings Corp. **The clerk of the court is hereby directed to remove the name TXU Corp. from the docket sheet and use the name Energy Future Holdings Corp. as Defendant.**

Memorandum Opinion and Order- Page 1

the dispute resolution provision of an underlying insurance policy. The parties agreed to arbitrate the coverage dispute pursuant to the terms of the policy's arbitration language contained within the dispute resolution provision. While the parties were adhering to the dispute resolution provision, a separate dispute arose as to whether all conditions precedent to arbitration had been met. Specifically, the parties dispute whether arbitration can begin prior to Energy Future Holdings' compliance with SRI's request for information. SRI contends that the court should resolve this separate dispute, but Energy Future Holdings contends that the latter dispute should be resolved by the arbitrator.

The court now sets forth the applicable allegations and facts upon which it relies to decide the pending motions. In 2002, in response to a significant decline in the value of Energy Future Holdings, Corp.'s common stock, several shareholders brought suit against Energy Future Holdings, Corp. and certain of its directors and officers for, among other things, alleged violations of state and federal securities laws and breach of fiduciary duties. Energy Future Holdings, Corp. and its directors and officers defended these lawsuits and ultimately settled them. Energy Future Holdings, Corp. contends that the defense costs and settlement amounts incurred by it and its directors and officers are covered under the policy it purchased from SRI and that SRI has failed to pay pursuant to the policy terms. Because its policy provides excess coverage over any underlying coverage for these losses and settlement amounts, SRI questions whether the underlying policies have been exhausted, which is required to trigger coverage under its policy.

Energy Future Holdings, Corp. invoked arbitration of the coverage dispute pursuant to the terms of the dispute resolution provision. SRI agreed to arbitrate the coverage dispute. Pursuant to the dispute resolution procedures, SRI requested documentation from Energy Future Holdings,

Corp. that the underlying policies had been exhausted. According to SRI, the dispute resolution provision provides that arbitration may not begin until Energy Future Holdings, Corp. first complies with its request for information. According to Energy Future Holdings, Corp., the requested information is not relevant, and it is not required to submit such information to SRI. Therefore, according to Energy Future Holdings, Corp., the parties should proceed to arbitration on the coverage dispute and allow the arbitrator to resolve the dispute about the information request.

This lawsuit involves two separate lawsuits that have been consolidated. On May 21, 2007, the first lawsuit was filed by SRI against Energy Future Holdings seeking an order that arbitration of the coverage dispute between the parties was premature because Energy Future Holdings had not submitted requested information in accordance with the dispute resolution procedures in the policy. Energy Future Holdings believes that this dispute should be resolved by arbitration rather than by the court, and on May 22, 2007, it filed suit against SRI seeking to compel arbitration. Energy Future Holdings contends that the parties should proceed to arbitration on the coverage dispute and allow the arbitrator to resolve the dispute about the information request. The court must determine whether it should resolve the information request dispute or whether this task falls within the scope of the arbitrator. The court determines that this task should be left to the arbitrator.

## II. Standards

### A. Rule 12(b)(6) Motion to Dismiss

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey*, 117 F.3d at 247. A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

B.   Motion to Compel Arbitration

The United States Court of Appeals for the Fifth Circuit has set forth a two-prong test for determining whether parties should be compelled to arbitrate a dispute. The first prong requires the determination of whether the parties agreed to arbitrate the dispute. *Safer v. Nelson Fin. Grp.*, 422 F.3d 289, 293 (5th Cir. 2005). The second prong requires the determination of "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Id.* at 294. "Arbitration should not be denied 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* The court considers each prong in turn.

III.   **Analysis**

A determination that the parties agreed to arbitrate a dispute depends on two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement." *Id.* at 293. This determination is generally made based upon state law principles that govern the contract. *Morrison v. Amway Corp.*, --F.3d-- , No. 06-20138, 2008 WL 315697, at *4 (5th Cir. 2008) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In applying state law principles, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause are to be resolved in favor of arbitration." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996), *reh'g denied* (internal quotations omitted) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989).

The first consideration, whether there is a valid agreement to arbitrate, is not at issue in this case. Neither party disputes the validity of the arbitration provision. *See* Pl.'s Br. re Mot. Dismiss

Def.'s Mot. Compel Arbitration 2. ("Insurance coverage disputes are governed by the ADR procedures adopted by the parties."); *see* Def.'s Resp.

The second consideration is whether the dispute in question falls within the scope of the arbitration agreement. The court looks to the language of the agreement to determine the scope of the agreement as intended by the parties. The arbitration provision reads as follows:

> Any controversy or dispute arising out of or relating to this POLICY, or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided herein within ninety (90) days of the initiation of such procedure, shall be settled by binding arbitration in accordance with the CPR Institute Rules for Non-Administered Arbitration of Business Disputes (the "CPR Rules") by three (3) independent and impartial arbitrators. The COMPANY and the INSURER each shall appoint one arbitrator; the third arbitrator, who shall serve as the chair of the arbitration panel, shall be appointed in accordance with the CPR Rules. If either the COMPANY or the INSURER has requested the other to participate in a non-binding procedure and the other has failed to participate, the requesting party may initiate arbitration before expiration of the above period. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1 <u>et se[q]</u>., and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The terms of this POLICY are to be construed in an evenhanded fashion as between the COMPANY and the INSURER in accordance with the laws of the jurisdiction in which the situation forming the basis for the controversy arose. Where the language of this POLICY is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in a manner most consistent with the relevant terms of this POLICY without regards to authorship of the language and without any presumption or arbitrary interpretation or construction in favor of either the COMPANY of the INSURER. In reaching any decision the arbitrators shall give due consideration for the customs and usages of the insurance industry. The arbitrators are not empowered to award damages in excess of compensatory damages and each party hereby irrevocably waives any such damages.
> In the event of a judgment being entered against the INSURER on an arbitration award, the INSURER at the request of the COMPANY, shall submit to the jurisdiction of any court of competent jurisdiction within the United States of America, and shall comply with all

> requirements necessary to give such court jurisdiction and all matters relating to such judgment and its enforcement shall be determined in accordance with the law and practice of such court.

App. to Def.'s Resp. 47-48. According to SRI, the dispute resolution provision provides that arbitration may not begin until Energy Future Holdings, Corp. first complies with its request for information. Energy Future Holdings, Corp. counters that the requested information is not relevant, and it is, therefore, not required to submit such information to SRI. According to Energy Future Holdings, Corp., compliance with the information request is not a condition precedent to arbitration and the parties should proceed to arbitration.

The arbitration agreement states that "[a]ny controversy or dispute arising out of or relating to this POLICY . . . shall be settled by binding arbitration . . . ." *Id.* at 47. This contractual language is certainly broad enough to encompass SRI's contention that arbitration may not begin until Energy Future Holdings, Corp. first complies with its request for information. The agreement states that *any* dispute arising out of or relating to the policy must be settled by binding arbitration. A dispute about the meaning of the language in the arbitration agreement qualifies as a dispute relating to the policy. Moreover, the agreement states, "In reaching any decision the arbitrators shall give due consideration for the customs and usages of the insurance industry." *Id.* at 48. Because this statement follows language regarding the construction of the policy, it is clear that the parties intended for policy interpretation to fall within the province of the arbitrators. The determination of whether the policy language that "[a]ll reasonable requests for information made by one party to the other will be honored," *Id.* at 47, is a condition precedent to arbitration necessarily turns on the

interpretation of the policy, which must be made by the arbitrators. For these reasons, the dispute about the information request falls within the scope of the arbitration agreement.[2]

The court finds that a valid agreement to arbitrate exists and that the dispute about the information request is within the scope of the arbitration agreement. Therefore, the parties agreed to arbitrate this dispute. Accordingly, the parties will be ordered to arbitrate and submit as part of the arbitration whether arbitration of the coverage dispute may begin before Energy Future Holdings, Corp. complies with SRI's request for information.

IV. **Conclusion**

For the reasons stated herein, the court determines that the parties agreed to arbitrate the issues of whether arbitration of the coverage dispute may begin before Energy Future Holdings, Corp. complies with SRI's request for information. Accordingly, the court **denies** SRI's Motion to Dismiss [Energy Future Holdings Corp.]'s Petition to Compel Arbitration. The relief requested in SRI's complaint against Energy Future Holdings (an order that arbitration of the coverage dispute between the parties is premature because Energy Future Holdings had not submitted requested information in accordance with the dispute resolution procedures in the policy) is inconsistent with court's decision herein. Also, SRI, in the action it filed, fails to state a claim upon which relief can be granted. Therefore, the court **grants** [Energy Future Holdings Corp.]'s Motion to Dismiss SR International Business Insurance Company Ltd's Complaint. In accordance with this opinion and order, the court **orders** the parties to arbitrate and **submit** as part of the arbitration the issue of

---

[2]The preamble in the dispute resolution provision reads: "Any controversy or dispute arising out of or relating to this POLICY . . . shall be resolved in accordance with the procedures specified in this Section . . . ." Because the broad language of the arbitration provision upon which the court relies in making its decision mirrors the quoted language in the preamble, the court would reach the same result if it considers the entirety of the dispute resolution provision rather than looking solely at the language of the arbitration provision.

whether arbitration of the coverage dispute may begin before Energy Future Holdings, Corp. complies with SRI's request for information.

The court determines that all issues or claims raised in this consolidated action are arbitrable and therefore must be submitted to arbitration. Having determined that all of the issues raised by the parties must be submitted to binding arbitration, and finding no other reason to retain jurisdiction over this matter, the court, **dismisses** this consolidated action **with prejudice**. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

**It is so ordered** this 6th day of March, 2008.

Sam A. Lindsay
United States District Judge